UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:23-CR-00023-DCR-MAS |
| v. ) | |
| ) | |
| JUSTIN L. OSBORNE, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION & ORDER**

This matter is before the Court on the United States' motion for detention of Defendant Justin L. Osborne ("Osborne"). The case presents the question of whether the Court should invoke pretrial detention of a defendant for risk of nonappearance because his instant charge is fleeing law enforcement unconnected from any other dangerous crimes, such as drug trafficking, illegal firearm use, etc. The Court finds that in this specific circumstance, the United States failed to meet its burden of proof that Osborne poses either a risk of nonappearance or a risk of danger, and therefore release is appropriate.

    **I.**     **LEGAL STANDARD**

The Indictment in this matter alleged that Osborne, in operating a vehicle, fled a law enforcement officer while on national forest property and thereby caused a substantial risk of serious physical injury and death to any person and property in violation of 18 U.S.C. §§ 7(3) and 13, and that he operated the vehicle in excess of speed limitations in violation of 36 C.F.R. § 261.54(d). [DE 1].

The United States moved for detention pursuant to 18 U.S.C. § 3142(f)(2)(A) ("a case, that involves . . . a serious risk that such person will flee[.]"). Based on the nature of the fleeing and

1

evading charge, Osborne did not challenge that the United States had met its preponderance burden to make such a motion under § 3142(f)(2)(A). *See United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). As this Court recently decided, however, once the United States meets its burden to have a detention hearing under § 3142(f)(2)(A), the Court may consider evidence related to the defendant's risk of nonappearance *and* the risk of danger he poses to the community no matter the (f) basis for detention. *See United States v. Cobix-Espinoza*, --- F.Supp.3d. ---, 2023 WL 1860982 (E.D. Ky. Feb. 9, 2023).

Detention premised on nonappearance requires preponderant evidence. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. July 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality,

2

the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors ultimately drive the overarching analysis.

## II.   FACTUAL BACKGROUND

**A.   OSBORNE'S BACKGROUND**

Osborne is a 33-year-old lifetime resident of Eastern Kentucky. [Pretrial Services Report at 1]. Osborne lives with his parents in Elk Fork, Kentucky. [Pretrial Services Report at 1]. Osborne's three brothers also live in Morgan County, Kentucky. [Pretrial Services Report at 1]. Osborne is employed as a heavy equipment operator at his brother's logging company. [Pretrial Services Report at 1]. Osborne has one child who resides with her mother in Hillsboro, Kentucky. Osborne does not possess a passport, has never traveled outside the United States, and has no ties outside of Kentucky.

Osborne's criminal history is quite limited outside of traffic offenses. In 2020, Osborne was convicted of 1st degree wanton endangerment involving discharging a firearm during a domestic dispute with his girlfriend. [Pretrial Services Report at 4]. Obviously, this is dangerous and violent conduct; however, this is the totality of Osborne's substantive criminal history. Drug testing and an alcohol prohibition were also mandated in that matter. [Pretrial Services Report at 5]. In March 2021, Osborne was criminally charged in an incident in which Osborne was intoxicated and found to be in possession of three oxycodone pills. [Pretrial Services Report at 5].[1] Osborne was sentenced to two years' suspended and two years unsupervised probation. Both

---

[1] The Pretrial Service Report suggests that this charge might be related to a possible overdose of another individual, but the Pretrial Service Report said the "narrative was not clear", and the United States did not reference this case during its proof. Thus, the Court gives this information little weight.

the 2020 diversion sentence and the 2021 suspended sentence were in place at the time of the subject federal offense.

In addition, Osborne acknowledged to USPO that he has a history of using cocaine, heroin, methamphetamines, and opiates, though he maintained he has not used any of these substances recently. Osborne stated he attended intensive outpatient treatment and has remained sober for more than a year.

**B.    ALLEGED CRIME**

The United States presented the testimony of Kyle McCammon ("McCammon") with the United States Forest Service to explain the charged crimes. Per McCammon, he was patrolling in the Daniel Boone National Forest on KY-801 when he observed a vehicle making minor traffic violations, such as too many items hanging from the rear-view mirror. When he ran the license plate number, the registered owner (not Osborne) had an outstanding Kentucky warrant. Thus, McCammon pulled the vehicle over. However, when he began to approach the vehicle on foot, the driver pulled a U-turn and sped off in the other direction. McCammon testified he viewed the driver as he passed and described him as a white male in his thirties with white eyes and a beard. [Recording at 3:45-52].

From there, McCammon gave chase reaching speeds of 80 to 90 miles per hour or more. Kentucky State Police attempted to deploy a spike strip to end the chase, but the vehicle evaded it. Eventually the vehicle exceeded 100 miles per hour, and McCammon was unable to keep up with the vehicle. The chase covered around 20 miles over 15 minutes. McCammon ultimately crashed his vehicle in the pursuit causing several thousand dollars in damage to the vehicle without any injury to McCammon. A substantial portion of the chase occurred within the Daniel Boone National Forest.

## III.   ANALYSIS

### A.   FLIGHT

The United States urged the Court to find Osborne a flight risk based on the following facts: (1) he has a prior failure to appear in court in his criminal history; (2) he is a former drug user; (3) he has $1,800 per month in cash flow; (4) the penalties in this case are lengthier than those he has previously served in state court; and (5) the charge at issue is fleeing law enforcement; and (6) he has previously violated probation. Although this is a long list, taking each in turn, the Court finds that the United States' arguments are not enough to establish preponderant evidence that Osborne is a risk of nonappearance as required by the BRA.

First, the United States stressed that the bond report reflects a warrant issued for a failure to appear in court in May 2021. However, this is not as injurious to Osborne's chances for release as the United States implies it should be. Osborne countered that this was issued on a minor traffic offense—failure to produce insurance card—and that the warrant was recalled when Osborne appeared for court one week later. [Pretrial Services Report at 5]. Jurisprudence dictates that the Court must discount any failure to appear in traffic court on the detention decision. *See*, *e.g.*, *United States v. Smith*, 2005 WL 8164465, at *3 (D. Kan. Dec. 21, 2005) (concluding that the defendant "likely d[id] not pose a flight risk" where he had only "one instance of failure to appear in court for a domestic hearing"). Thus, this argument adds very little to the nonappearance calculus.

Second, the United States points to the fact that Osborne has previously used controlled substances. As this Court has often noted, frequent drug users constitute flight risks. *See United States v. Valentin-Cintron*, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) ("As a frequent drug user defendant constitutes a 'flight risk.'") (citing The Federal Bail and Detention Handbook and S. REP. NO. 225, 98th Cong. 1st Sess. 23, nn. 66, 68 (1983)). Yet, for Osborne, there is no indication of any current substance use disorder like so many other defendants this Court sees. And more

importantly, Osborne and his maintain his sobriety for more than a year after seeking treatment. The United States was unable to provide any information to the contrary. The Court struggles to see how former drug use more than a year ago equates to a nonappearance risk today.

Next, the United States cites Osborne's suspicious cash flow of $1,800 per month. The Court flatly disagrees with this assessment. The Pretrial Service Report states that Osborne earns $2,166.67 each month working for his brother's logging company, an annual income of approximately $26,000. Osborne's unaccounted cash flow is nothing more than the fact that he lives with his parents and consequently reports very little expenses. Again, this argument falls flat relevant to a nonappearance analysis.

Fourth, the United States suggested the mandatory minimum sentence of one year imprisonment also weighs in favor of detention. The Court disagrees that a mandatory one-year prison term provides an incentive to flee. Courts have generally regarded much longer potential sentences as favoring detention. *See, e.g.*, *United States v. Shuklin*, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (observing that "significant penalties," such as a maximum of 20 years in prison, "provide a strong incentive to flee"). In context of the typical large sentences this Court sees, a sentence for the lowest class of felony is not enough to raise a considerable nonappearance risk.

Fifth, as Osborne acknowledged at his initial appearance, the charge itself—fleeing law enforcement—obviously suggests a risk of nonappearance. Utilizing law enforcement databases and his observations, McCammon determined that Osborne was the driver of the vehicle involved in the chase. McCammon testified he was "very confident" Osborne was the driver of the vehicle involved in the chase; nevertheless, Osborne maintains his innocence. Osborne suggested that another specific individual could have been the driver of the vehicle. Though Osborne maintains

his innocence, a grand jury has found probable cause that Osborne led law enforcement on a 20-mile chase, evading spike strips, and possibly exceeding speeds of 100 miles per hour. Without question, the circumstances suggest a risk of nonappearance. Yet, the charge itself—a traffic stop gone dangerously awry resulting in a Class D felony under Kentucky law or Class E felony under federal law (the lowest class of felony in both instances)—is not enough by itself to amount to preponderant evidence. To reach such a conclusion would mean nearly any defendant that *only* engages in a high-speed chase is a lock for detention under the BRA, a conclusion unsupported by any case this Court can find.[2] Accordingly, the Court turns to the other arguments from the United States to overcome the preponderance hurdle.

Finally, the Court agrees with the United States that a concerning aspect of this case is that Osborne was serving a term of pretrial diversion and probation for the 2020 and 2021 convictions at the time of this offense. The BRA specifically directs the Court to consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release[.]" 18 U.S.C. § 3142(g)(3)(B). Failure to abide by state court-imposed conditions certainly gives this Court pause as to whether there are conditions available that will sufficiently mitigate any risk of noncompliance in the form of flight from prosecution or failure to appear in court.

In the end, the United States has truly put forward two meritorious arguments suggesting a risk of nonappearance: (1) the circumstances of the charged crime and (2) that the charge was incurred while Osborne was on pretrial diversion and probation. The United States is right to raise these arguments, but, when taken in the context of facts favoring Osborne, the preponderance evidence weighs in favor of Osborne. Osborne is a lifetime native of his community who lives

---

[2] As discussed infra, cases finding detention appropriate under the BRA involving a high speed chase with law enforcement are always coupled with other criminal actions (*e.g.*, drug trafficking, bank robbery, etc.) with a lengthy criminal history. That is not the case here.

with his parents and next door to his siblings (one of whom is his employer). Osborne has participated in both state pretrial diversion and probation, and while he has not had perfect compliance in those programs, he has not engaged in any fleeing, evading, or absconding while under court supervision. He was able to immediately correct his traffic-related failure to appear within one week, which speaks to his willingness to appear for court when required. There is no evidence he currently uses controlled substances, has a secret stockpile of cash, or any other reason or means to leave his home in Elk Fork.

The Court finds the United States did not prove by a preponderance of the evidence that Osborne is a risk of nonappearance. Rather, as detailed below, the Court can craft conditions that reasonably assure his appearance for Court.

**B.    DANGER**

    **1.    NATURE AND CIRCUMSTANCES OF THE OFFENSE**

The Court first considers the nature and circumstances of the offenses charged. 18 U.S.C. §§ 3142(g)(1). Osborne is charged with a misdemeanor speeding violation and a violation or 18 U.S.C. §§ 7 and 13, which prohibits

> any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13. Essentially, Osborne committed a federal offense by breaking Kentucky state law—specifically, KRS 520.095, fleeing or evading police in the first degree by causing or creating a substantial risk of serious physical injury or death or any person or property. KRS 52.095(1)(a)(4). This crime is a Class D felony in Kentucky, the lowest felony classification in Kentucky. According to McCammon, the conduct that led to the traffic stop in the first place was an obstruction in the windshield and stopping too closely to the vehicle in front. The Court agrees

8

that a high-speed chase poses a danger to law enforcement and the community, and that the nature of this charge was in and of itself fleeing law enforcement; however, this remains a nonviolent, non-presumption, lowest-level felony offense.[3]

C. **WEIGHT OF THE EVIDENCE & THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

The next consideration gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010). "[T]he § 3142(g) analysis is concerned with a practical assessment of the defendant's dangerousness, rather than an adjudication of guilt for a particular offense." *United States v. Tolbert*, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citing *Stone*, 608 F.3d at 948). Given the breadth of the second factor as interpreted under *Stone*, facts relevant to the second factor often overlap the third factor considering the history and characteristics of the defendant. The third factor considers a host of issues including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history. . ." 18 U.S.C. § 3142(g)(3). Considering this overlap, the Court addresses both factors together.

For these factors, the United States pointed to Osborne's criminal history and prior drug use, a prior incident involving this same vehicle, and the charged crime. For the criminal history and prior drug use, the Court remains unconvinced. Osborne's criminal history is relatively minimal. Outside the wanton endangerment conviction concerning a domestic dispute involving a firearm (a serious charge), Osborne's other history is nonviolent. It is particularly worrisome

---

[3] See a comparison of other high-speed chase cases in which detention was appropriate, *infra*.

that his instant conduct occurred while he was on pretrial diversion and probation for the 2020 and 2021 convictions, respectively. This fact does give the Court pause on whether Osborne will be able to conform his behavior to be within the bounds of pretrial supervision. 18 U.S.C. § 3142(g)(3)(B). Nonetheless, Osborne's limited criminal history balance out this negative fact. And, again, Osborne's prior drug use lacks relevance when there is no evidence his sobriety has lapsed.

For the prior incident involving the same car, there is little evidence to support Osborne's involvement. In short, McCammon, who the Court found credible, merely testified that there was a high speed chase some months earlier involving the same vehicle. However, McCammon provided no more information about that high-speed chase, the context of that chase, and, more importantly, if law enforcement suspected or had any belief Osborne was driving during that chase. Surely, if the United States had such evidence, it would have presented it.

For the charge itself, the Court has already discussed that while the crime certainly poses a danger to the public, it is the lowest class of felonies. Moreover, a thorough review of other cases involving a high-speed chase does not lead the Court to the conclusion of detention under the BRA. Rather, those cases involve much more serious charges or conduct that happened to result in a high-speed chase, or defendants with significant violence and other felony convictions in their criminal histories, not a stand-alone chase through a national forest incident to a minor traffic stop. *E.g.*, *United States v. Gray*, 2020 WL 2703148, at *1 (S.D. Ohio May 26, 2020) (Finding detention appropriation in a felon in possession case where the defendant's "criminal history included five prior felony convictions, five prior misdemeanor convictions as well as a pending drug charge for heroin in state court."); *United States v. Johnson*, 2022 WL 2800242, at *4 (N.D. Ohio July 18, 2022) (Detaining a defendant who allegedly used a stolen SUV to break

into an ATM to rob it and engaged in a high-speed chase (though as the passenger), where the defendant had convictions for assault on a public official, organized crime, and felony theft (pleaded down from aggravated kidnapping) in his criminal history); *United States v. Martin*, 2022 WL 16636924, at *2 (E.D. Mich. Nov. 2, 2022) (Detention appropriate where a bank robbery led to a high-speed chase, traffic accidents, and a stand-off with law enforcement, when the instant bank robbery was the fifteenth in a string of robberies by that defendant and he had seven prior failures to appear in court.); *United States v. Benjamin*, 2022 WL 16835849, at *4 (N.D. Ohio, Nov. 8, 2022) (Denying motion to revoke detention order where, like here, defendant had a prior weapons conviction, family support, and the charge itself was not violent, but unlike here, the case was post-guilty plea and defendant's admitted conduct included a high-speed chase in a "stolen high-end muscle car," and the Court noted the defendant's lack of stable employment did not weigh in his favor.); *United States v. McDowell*, 2022 WL 94115, at *2 (N.D. Ohio Jan. 10, 2022) ("McDowell led police on a dangerous high-speed chase that ended in a near collision with a motorist whom McDowell attempted to carjack. . . . He also has a history of violent crimes, including rape and assault."). In each of these cases, the defendant was not charged with only the high-speed chase, but, instead, the high-speed chase was incidental to another crime or criminal conduct, and the defendant had other concerning history and characteristics not present here.

Even considering the admitted danger implicit in the current charge, the Court does not believe there is significant weight to Osborne's dangerousness nor do his personal characteristics suggest clear and convincing evidence of danger.

D.     **NATURE AND SERIOUSNESS OF THE DANGER TO ANOTHER OR THE COMMUNITY**

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). The Court finds Osborne poses a very low risk of danger to the community if released. He has a generally

11

nonviolent past, except for the wanton endangerment conviction. There is no evidence he has been recently using drugs or alcohol. Unlike other types of conduct (for example, child sex abuse or drug trafficking), the unusual nature of the incident that led to Osborne's Indictment in this case is unlikely to be repeated if he is released on bond. As discussed below, any danger that he may pose can be mitigated with conditions.

For the reasons stated above, the Court finds that the United States failed to prove by a preponderance of the evidence that Osborne poses an irremediable risk of flight and failed to prove by clear and convincing evidence that Osborne poses an irremediable risk of danger. To be sure, the United States showed that Osborne poses some risk of danger; however, it did not meet its burden. The Court finds there are conditions that will mitigate both risks sufficiently.

E. **CONDITIONS OF RELEASE**

In every case in which a defendant is released on bond, there are risks that the defendant will abscond, fail to appear, or engage in conduct that is dangerous to another person or the community at large. The BRA does not require the Court to release a defendant only where those risks can be *completely eliminated*; if it did, pretrial detention would be required in every case. Rather, the BRA mandates only that "conditions will *reasonably assure* the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1) (emphasis added). No conditions of release are perfect.

There are, however, a combination of conditions that will reasonably assure Osborne's appearance and the safety of the community. The nature and seriousness of the danger Osborne poses if released under his proposed conditions is low, as is the risk that he will flee the jurisdiction or fail to appear. GPS monitoring addresses the concerns of nonappearance, as USPO will be able to always monitor his location. *See United States v. Demmler*, 523 F. Supp. 2d 677, 684 (S.D. Ohio 2007) (finding that GPS monitoring could "adequately alert law enforcement if [the

defendant] attempts to flee" and concluding that "given the otherwise low likelihood of flight[,]" it would adequately safeguard against any nonappearance risk).

To address and mitigate any danger concerns, Osborne shall be subject to regular drug testing by USPO. Osborne is prohibited from operating any motor vehicle, possessing or consuming controlled substances not prescribed by a physician, and from consuming alcohol. The Court's Order Setting Conditions of Release details these and other mandatory and special conditions.

### IV.     CONCLUSION

Based on the § 3142(g) factors and the facts of this case, the Court finds the United States failed to establish by a preponderance of the evidence that Osborne poses an irremediable risk of nonappearance and likewise failed to prove by clear and convincing evidence that Osborne is a danger to another or the community. The Court can impose a combination of conditions that will reasonably assure the safety of the community and Osborne's appearance at future court hearings.

For these reasons, and as stated on the record, the Court **DENIES** the United States' oral detention motion. The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this 17th day of March, 2023.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY